IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ARTEMIO VIELMA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| COOPER TIRE & RUBBER COMPANY, | § | CIVIL ACTION NO. 5:10-cv-00099 |
| PEP BOYS-MANNY, MOE & JACK OF | § | JURY |
| DELAWARE, INC., AND LUCY LOPEZ, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT COOPER TIRE & RUBBER COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF PROTECTIVE ORDER**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Cooper has proposed a protective order that most appropriately balances the respective rights of each party. In contrast, plaintiff has proposed a protective order that is, in fact, not protective – as it would make plaintiff's counsel an unfettered clearinghouse for Cooper's confidential design, manufacturing and operational documents that may be produced by Cooper in this case. Plaintiff's proposed protective order is virtually identical to the interim protective order entered in the Ford/Firestone multidistrict litigation, which consisted of hundreds of cases and followed issuance of a large tire recall. Such a wide-reaching protective order was designed for use in unique situations such as the Ford/Firestone multidistrict litigation and is not necessary or appropriate in this case, which unlike the Ford/Firestone litigation, involves the alleged failure of one specific tire (a Futura Dakota H/T tire, size P255/70R16),

manufactured to one specific Green Tire Specification ("GTS") 3616, at one plant (Cooper's Texarkana, Arkansas plant), during one production week, June 12–18, 2005 – March 1, 2003.

Plaintiff's proposed order would allow plaintiff's counsel to share Cooper's trade secrets and confidential commercial information with other litigants without providing any notice to Cooper or any opportunity for Cooper to object. The contemplated "sharing" under plaintiff's proposed order could also occur without any court supervision of plaintiff's dissemination of Cooper's trade secrets. This is clearly improper under Texas law. To avoid such undesirable effects, the *overwhelming majority* of protective orders entered in cases against Cooper prohibit sharing and require the return of confidential material at the end of each case. Non-sharing protective orders almost identical to the one Cooper has proposed here have been entered by federal courts in Alaska, Arkansas, California, Florida, Georgia, Louisiana, Mississippi, Nevada, New Mexico, New York, Pennsylvania, Utah, and all four federal district courts in Texas. Cooper will provide the Court with copies of any of these orders that the Court wishes to inspect.

Plaintiff's proposed protective order does not adequately protect Cooper's trade secrets. Instead, it creates an unfair burden on Cooper, as it would any entity seeking to protect its *property interest* in trade secrets while addressing civil discovery in a tort case. Such protective orders offer so little protection that defendants are faced with a Hobson's choice of either litigating or settling a case, not due to the intrinsic merits of a plaintiff's case, but rather by the likelihood of irreparable harm stemming from disclosure of the defendant's trade secrets. "Sharing" protective orders erode the "level playing field" of our system of justice. Civil disputes between parties are to be resolved on their merits, and not under express or implied threats of catastrophic loss of a corporation's trade secrets, its very life blood. The Court should deny plaintiff's request and enter Cooper's proposed protective order.

## I. A SHARING PROTECTIVE ORDER WOULD JEOPARDIZE COOPER'S TRADE SECRETS.

Plaintiff's primary complaint about Cooper's proposed order, and the basis upon which plaintiff objects to paragraphs 7 and 10, is that it prohibits the "sharing" of Cooper's documents among litigants in other cases against Cooper.[1]

### A. Plaintiff's proposed "sharing" protective order wholly ignores the law regarding discovery of trade secrets in Texas.

Plaintiff erroneously relies on *Garcia v. Peeples*, 734 S.W.2d 343 (Tex. 1987), to support his position that a "sharing" protective order should be entered in this case. The *Garcia* opinion is <u>not</u> controlling case law when plaintiffs seek to share trade secret information as plaintiff is asking to be allowed to do in the present case. In fact, the holding of *Garcia* regarding the "sharing" of discovery has been effectively abrogated in regard to trade secrets by the Texas Supreme Court in *In re Continental Gen. Tire, Inc.*, 979 S.W.2d 609 (Tex. 1998).

In *In re Continental*, the Texas Supreme Court recognized that the *Garcia* court did not consider or apply Texas Rule of Evidence 507 regarding protection of trade secrets and that "Rule 507 clearly contemplates a heightened burden for obtaining trade secret information." 979 S.W.2d at 613. The *In re Continental* court also held that if the requesting party meets its burden of showing that the defendant's trade secret information is necessary for a fair adjudication of its claims, the trial court may compel disclosure of that information subject to an appropriate protective order. The appropriate protective order entered by the trial court in *In re Continental*

---

[1] Plaintiff also argues that he should also be allowed to "share" Cooper's documents with governmental agencies that regulate consumer safety products. There is no evidence that the tire at issue, or any of the documents relevant to the subject tire, raise any issues of public safety so as to undermine Cooper's right to protect its trade secret and confidential commercial information. The tire has not been found defective and has never been the subject of any safety or other recall. Furthermore, the government already regulates and monitors the manufacture and sale of tires.

contained the following characteristics, all of which are absent in plaintiff's proposed protective order:

1. It limited access to the confidential information to the parties in that lawsuit, their lawyers, consultants, investigators, experts and other necessary persons employed by counsel to assist in the preparation and trial of that case;

2. It required that each person given access to the documents agree in writing to keep the information confidential; and

3. It required all documents be returned to the defendant at the conclusion of the case.

979 S.W.2d at 613, note 3. The Texas Supreme Court in *In re Continental* did not authorize or sanction the issuance of a "sharing" protective order.[2]

"Sharing" of trade secret information with "similar litigants" in other cases against Cooper, as is contemplated in plaintiff's proposed protective order, would potentially undermine the entire discovery process in those other cases.[3] An order permitting such "sharing" would allow plaintiffs in those other cases to circumvent the jurisdictional requirements under Texas law for discovery of trade secrets, and may very well undermine another judge's determination of the appropriate scope of discovery in a case before him or her. Under Texas law, the discovery of trade secrets is limited to the particular lawsuit in which such confidential

---

[2] It should be noted that the United States District Courts for the Western District of Texas recognizes the need to protect a party's proprietary information and trade secrets as the standard form protective order used by the Western District (1) limits the receiving party's use of another party's confidential information produced in a case solely to the purpose of preparing and trying the case in which the documents are produced; (2) limits the disclosure of such confidential documents strictly to certain defined persons who are involved in the case in which the documents are produced; and (3) requires the return of all confidential documents and copies to the producing party at the conclusion of the subject litigation (*see* Paragraphs 1, 3 and 14 of the Western District Protective Order Form, a copy of which is attached hereto as Exhibit D).

[3] To further support his proposed "sharing" protective order, plaintiff argues that sharing is appropriate among litigants who allege the same type of defect, and then proceeds to cite a number of cases that allegedly support a broad scope of discovery. Any argument as to the proper scope of discovery in this case is misplaced and premature given that the motion before the Court deals only with the appropriateness of Cooper's proposed protective order. If the Court determines that this is the appropriate juncture at which to consider the scope of discovery, Cooper respectfully requests that it be given an opportunity to brief that issue in detail and to provide the Court with affidavits and other support.

information has been shown to be both relevant and necessary to the fair adjudication of the plaintiff's claims. *See, e.g. In re Bridgestone/Firestone*, 106 S.W.3d 730, 732-3 (Tex. 2003); *In re Continental*, 979 S.W.2d at 610-3. If plaintiff is allowed to share Cooper's trade secrets and confidential commercial information produced in this case with litigants in *other* cases, the requirement under Texas law for those other plaintiffs to make *any* showing of relevance or necessity in their case, let alone meet the heightened, fact-specific burden required by Texas law, is completely lost.[4]

Relevance and necessity are <u>case-specific</u> concepts, not generic ones. Therefore, each individual case involving tires made to unique designs for specific applications necessarily requires independent analysis. If plaintiffs in other lawsuits against Cooper desire the production of trade secret information, the judge in each respective case should determine whether the trade secrets being sought are necessary and relevant in the context of that case. *See Id.*; *Hartley Pen Co. v. United States District Court*, 287 F.2d 324, 330-1 (9th Cir. 1961); *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981); *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (5th Cir. 1991). In essence, a "sharing" protective order undermines the Texas Supreme Court's decisions in *In re Continental* and *In re Bridgestone/Firestone* and vests plaintiff in *this* case with complete control over dissemination of Cooper's intellectual property (its trade secrets and confidential commercial information) in *other* cases. Vesting such power upon the plaintiff in this case is improper as Texas law requires that the courts in those *other* lawsuits, not the plaintiff in *this* case, be the gatekeepers for dissemination of Cooper's trade secrets.

---

[4] Courts recognize the potential danger sharing of discovery poses to subverting discovery requirements. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) (intervenor seeking modification of protective order to gain access to discovery "must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein. Requiring a showing of relevance prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding.")

Furthermore, the legal requirement of an enhanced burden for discovery of trade secrets in other lawsuits is undermined if the litigants therein need only come to plaintiff's counsel in this lawsuit to obtain Cooper's confidential documents. Under such a scenario, the system of checks and balances required under Texas law to protect the confidential trade secret information of a party which is to be applied by neutral judges not plaintiff or his counsel, is bypassed. Even if the judge in another case has determined that "Litigant X" has not met the standards for relevance and necessity in a particular jurisdiction, he or she need only go to plaintiff's counsel in this case to make a deal on plaintiff's counsel's terms, thereby obtaining Cooper's trade secrets while circumventing the judicial process and the requirements under Texas law to properly obtain such information.

Finally, permitting Cooper's trade secrets to be shared beyond this lawsuit makes it virtually impossible for this Court or Cooper to track who has accessed its trade secrets and confidential commercial information and to whom the information has been intentionally or unintentionally distributed. The mere process of attempting to determine which litigants may obtain Cooper's confidential and trade secret information is obviously susceptible to abuse. Assuming that the process is not abused, and even if the "sharees" were to sign a confidentiality agreement, Cooper's trade secrets are still not effectively protected. If it is discovered that an improper dissemination of Cooper's trade secrets has occurred, the "sharees" will simply blame one another and any accountability is lost. Once trade secrets and confidential commercial information reach a competitor or are made public (thus losing their trade secret status), Cooper's substantial investment in those trade secrets is lost,[5] causing irreparable harm to the

---

[5] The vast investments in time and money expended by Cooper in developing its trade secret information, as well as in the protection and preservation of such trade secret information, was set forth in the November 5, 2010 Affidavit of Anthony E. Brinkman, which was attached as Exhibit B to Cooper's Motion for Entry of Protective Order previously filed in this lawsuit.

development of its competitive advantage, as well as financial damage that could vastly exceed the amount at issue in the present controversy.[6] Moreover, even after this case ends, this Court may be called upon to monitor and enforce a protective order which permitted the sharing of confidential information with litigants in other cases.

### B. Courts have recognized a network of plaintiffs' attorneys' intent on compromising Cooper's trade-secret protection.

Cooper's concerns about detrimental dissemination of its confidential documents are real. Cooper has long suspected that individuals might have set up repositories of Cooper documents in direct violation of protective orders. A federal court has <u>confirmed</u> Cooper's suspicious. In *Moore-Coleman v. Cooper Tire & Rubber Co.*, the court was concerned that its protective order was being violated by a "freelance paralegal" (Lisa Pasbjerg) and a network of attorneys. The Special Master's report found:

> Even considering the limited number of e-mails and amount of correspondence recovered from Ms. Pasbjerg's computer by the forensic examiner, **a pattern of complete disregard for court orders** while appearing to remain aboveboard with the courts and defense counsel **is evident not only by Ms. Pasbjerg but also various counsel for the Plaintiffs.**

*See* September 9, 2008 Order, *Moore-Coleman v. Cooper Tire & Rubber Co.*, CV 203-050 (S.D. Ga. 2008), attached hereto as Exhibit A at 3 (emphasis added).

Of similar concern, last year the Department of Justice indicted two individuals on charges they "conspir[ed] to steal trade secrets from [a competitor tire company] and schem[ed] to defraud [that company] of confidential and proprietary information," in order to sell this information to a Chinese tire company. *See* March 6, 2009 Department of Justice Press Release,

---

[6] The dangers regarding inadequate protections for trade secrets were articulated by the Eleventh Circuit in *Chudasama* v. *Mazda Motor Corp.*, 123 F.3d 1353, 1372 n.43 (11th Cir. 1997) (noting "the potential economic harm of allowing Mazda's proprietary information to be disclosed to its commercial competitors may very well exceed its potential liability in this case …. Mazda [could have determined that it] would have been better off to disclose *no* proprietary information and accept default. Although it would have lost the lawsuit, it would have been assured that its proprietary information would not end up in the public record").

attached hereto as Exhibit B at 1. This illustrates that trade secrets owned by companies such as Cooper are highly sought-after, and command great value on the open international market; indeed, the trade secrets providing million dollar shortcuts to designing and manufacturing tires have generated enough interest to entice people to commit crimes in order to obtain them.

It is hard enough policing misuse and improper dissemination of trade secrets and confidential commercial information in cases where there is a good faith agreement to protect and preserve information and proper non-sharing protective orders have been entered; it would be virtually impossible to do so under plaintiff's proposed protective order. As shown in the *Moore-Coleman* case, good faith cannot be assumed by all. More stringent controls are required than are included in plaintiff's proposed protective order, including no sharing of trade secrets from case-to-case. Adequate supervision and protection will be impossible if the court adopts the illusory controls sought by plaintiff.

**C.     Entry of a "sharing" order violates Cooper's property rights.**

Federal law recognizes that trade secrets constitute a valuable property interest. *In re Remington*, 952 F.2d at 1032 ("Confidential business information has long been recognized as property… Public disclosure of trade secrets extinguishes the owner's property rights."). Trade secrets are protected by the Takings Clause of the Fifth Amendment of the United States Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (states create property interests, but once created they are subject to the protections of the Fifth Amendment); *Union P.R. Co. v. Dept. of Revenue*, 10 OTR 235, 240 (Or. T.C. 1986). Once a property interest is created, a state agency cannot be used to effectuate a taking without first meeting the due process requirements of the Fourteenth Amendment to the U.S. Constitution. *Id. at* 569-70.

By seeking an illusory protective order, plaintiff is asking this Court to use the state's power to take Cooper's property — the trade secrets, confidential and proprietary business information that Cooper needs, keeps secret, and relies on in its business — and to give this property to third parties not before the Court. This would be a transfer of Cooper's property without due process and a violation of Cooper's rights under the U.S. Constitution.

## II. PLAINTIFF'S OTHER ALLEGED CONCERNS REGARDING COOPER'S PROPOSED PROTECTIVE ORDER ARE WITHOUT MERIT AND PLAINTIFF'S PROPOSALS ARE INADEQUATE.

Besides the issue of sharing, plaintiff raises concerns regarding certain other aspects of Cooper's proposed protective order. None of them have merit. Cooper addresses plaintiff's concerns about each paragraph of Cooper's proposed protective order.

- **Paragraph 1:** Cooper's Paragraph appropriately defines confidential material as

"information and records of . . . Cooper . . . protected as trade secrets or confidential information pursuant to state and federal law." The declaration of Cooper's Anthony Brinkman, which is the only expert evidence before the Court, discusses the specific categories of Cooper's confidential documents, and explains in detail[7] why the documents satisfy Texas's definition of trade secrecy. Plaintiff's proposed definition, on the other hand, is much narrower and would exclude large categories of confidential information. Plaintiff's definition of confidential material is therefore inappropriate.

Alternatively, plaintiff proposes that Cooper's Paragraph 1 be revised to explicitly exclude broad categories of confidential documents from protection. This is contrary to the law and would be unprecedented. Cooper has proven the confidential nature of these categories of documents through Mr. Brinkman's declaration. Category by category, in over 20 paragraphs,

---

[7] Contrary to being "conclusory" and "generic," Mr. Brinkman's declaration describes specific categories of Cooper documents that qualify as Texas trade secrets, and includes detailed explanations as to the importance of the documents to Cooper and the steps taken to protect their secrecy.

he explains how Cooper's technical information was developed (at significant cost to Cooper), why it is valuable, how it gives Cooper important competitive advantages, how it is kept secret from competitors, and more. *See* Exhibit B to Cooper's Motion. This satisfies Texas's definition of trade secret. *See In Re Bass*, 113 S.W. 3d 735, 739 (Tex. 2003). In stark contrast, plaintiff provides the Court with no counterpart expert or other testimony questioning Mr. Brinkman's opinions.

- **Paragraph 4:** Contrary to plaintiff's contentions, nothing in Cooper's proposed protective order relieves Cooper of its burden under Federal law to make the requisite showing of good cause to protect its trade secrets. *See* Plaintiff's Response, p. 4. Cooper cannot simply stamp documents as "confidential" without any scrutiny. Cooper's proposed protective order requires it to make the confidential designation in good faith as to each and every document so designated. *See* Exhibit A to Cooper's Motion, ¶3. Most important, plaintiff has the absolute right under Cooper's proposed order to object to the confidential designation of any document, and then any particular document remaining in dispute will be reviewed by the Court. The burden of establishing trade secret or other confidential status remains with Cooper.

Plaintiff proposes that Cooper identify the "specific applicable privilege" that allows each document to be designated as confidential. Cooper submits that plaintiff is confusing the terms "privileged" and "confidential," as a document can be confidential without being privileged.

The last item added by plaintiff's proposal is an inappropriate automatic authentication provision. Authentication is not an issue that needs to or should be addressed in the protective order.

- **Paragraph 6:** Nothing in Cooper's proposed paragraph reverses or changes the burdens for proving confidentiality designations and/or objecting to them. Moreover, the

requirement that plaintiff make such objections within 60 days is neither burdensome nor unreasonable. There must be a time limit for such objections to prevent "sandbagging" objections to all Cooper's designations on the eve of trial. However, Cooper is willing to alter its proposed order to given plaintiff 90 days from the production of a document to object to its confidential designation.

Plaintiff proposes that Cooper be allowed only 10 days after a confidentiality challenge to prove the confidential nature of the document at issue. Plaintiff's proposal is unreasonable, particularly in light of the 90-day window for challenging confidentiality designations that Cooper is willing to allow plaintiff. Plaintiff's proposal also overlooks the possible need for court intervention to resolve such challenges and the likely impact that court involvement would have on plaintiff's unreasonable time restrictions. Cooper's proposed paragraph 6 is superior to the alternatives proposed by plaintiff.

- **Paragraph 9:** Cooper's paragraph places necessary limits on the manner in which plaintiff can store and transmit confidential material to protect the highly valuable trade secret and confidential commercial information Cooper anticipates producing in this case. Given the continuing technological advancements regarding communication of electronic information and the ease with which information can be transmitted electronically, it is utterly essential that the protective order place adequate restrictions on the transfer and storage of confidential material that is in electronic form in order to ensure Cooper's trade secrets remain secure.[8]

---

[8] Once Cooper's confidential materials are stored on an electronic storage system, such as a computer hard drive, that form of a "copy" cannot be returned to Cooper at the end of a case. Even if counsel for plaintiff attempts to "delete" or "erase" Cooper's confidential material from his computer hard drive, the technology exists to allow the confidential material to be retrieved from the hard drive years later. In other words, the confidential document images are never truly "deleted" from the hard drive. As such, counsel for plaintiff (or whoever else may obtain access to the hard drive after it leaves his possession) will, in effect, "own" Cooper's trade secrets in perpetuity. Similarly, the transmission of Cooper's confidential material via e-mail also places its trade secrets at risk of unauthorized disclosure. Because of the ease in sending an e-mail, Cooper's confidential materials could be inadvertently sent and/or forwarded to an unintended recipient. Cooper's production of responsive confidential

- **Paragraph 11:**  Cooper's paragraph advocates the same procedure that plaintiff proposes, that confidential documents that must be submitted to the court be filed under seal. Cooper's proposed paragraph 11 simply uses different terminology than plaintiff's proposal. Indeed, filing documents under seal and in-camera judicial review of such documents are fairly standard methods for protecting confidential material when it is necessary to present such information to a court.  Cooper is willing to revise Paragraph 11 by substituting the "filed under seal" language that plaintiff prefers.

- **Paragraph 13:**  Plaintiff proposes that this paragraph be deleted because the protective order "is not a trial plan."  This position is contradictory to plaintiff's request for an automatic authentication provision (also a trial issue) in Paragraph 4 above.  Nonetheless, Cooper is willing to compromise and revise the paragraph to state that "The procedure under which the confidentiality of **confidential material** may be preserved at trial will be addressed by the Court as a pre-trial matter."

- **Paragraph 15:**  Plaintiff asks the Court to eliminate the requirement that plaintiff return Cooper's confidential material at the conclusion of this case and reserve the issue for determination at a later date.  Cooper's need for protection of its trade secrets and confidential commercial information does not end at the conclusion of this lawsuit.  Cooper's trade secrets and confidential commercial information are the bedrock of Cooper's entire business.  Only an appropriate and fair order preventing the sharing of and requiring the return of Cooper's

---

information on compact discs satisfied plaintiff's need to use electronic review and presentation of Cooper's documents and eliminates the need for hard drive storage.  The CD format allows counsel for plaintiff to readily and efficiently access the confidential material for electronic use (such as a trial presentation) and to provide copies to "authorized persons" under Cooper's Proposed Order.  In addition to this convenience, production of the confidential material on CD permits efficient accounting and return of Cooper's confidential material at the conclusion of the litigation.  In order to address these concerns, Cooper includes Paragraph 9 in its Proposed Order, which eliminates the significant risks that occurs as a result of "permanent" storage and the possibility of inadvertent e-mail distribution.

confidential documents at the conclusion of this litigation will effectively protect the confidentiality of Cooper's trade secrets and confidential commercial information. *See In re Continental*, 979 S.W.2d at 613 n.3 (holding that an adequate protective order limits access to the information during litigation and requires return of all information at the conclusion of litigation). Cooper's paragraph provides this protection.

### III. PLAINTIFF'S OTHER MISSTATEMENTS MUST BE ADDRESSED.

Plaintiff's Response includes numerous misstatements and inaccuracies that need to be addressed.

Plaintiff references a decision from a Cooper case in New York (*Mann v. Cooper Tire*) to support his claims that certain categories of Cooper's documents do not qualify for protection. *See* Plaintiff's Response, p. 2. A New York appellate court, applying New York law, ordered that narrow categories of information be produced outside the protective order in the *Mann* case. Plaintiff fails to mention, however, that the vast majority of the documents Cooper produced in the *Mann* litigation remained subject to the non-sharing protective order entered by the *Mann* trial court. Plaintiff also fails to mention that New York, unlike Texas and 44 other states, has <u>not</u> adopted the Uniform Trade Secrets Act. Unlike Texas, New York does not define trade secrets to include the <u>potential</u> value of trade secrets. The divergence between New York and Texas law on trade secrecy provides yet another reason why the opinions contained in the Mann order do not serve as precedent for this court. Furthermore, the *Mann* opinion cited by plaintiff is overshadowed by the overwhelming majority of Courts who have found Cooper's documents to contain confidential, proprietary, and trade secret information requiring the protection of Cooper's proposed protective order.

Plaintiff attempts to further prejudice the Court against Cooper by accusing Cooper of having a "history of destroying documents." *See* Plaintiff's Response, p. 10. What did or did not happen in other cases is not relevant to *this* case. Cooper's size and status as one of only two major domestic tire manufacturers means that, in any given year, it is involved in scores of products liability lawsuits around the country. Discovery disputes inevitably arise in litigation, and while some disputes have been resolved against Cooper, many others have been resolved in Cooper's favor. Moreover, what happened in a discovery dispute has no bearing on whether Cooper's documents are entitled to protection.

Plaintiff again cites the *Mann* opinion, which vaguely references historical orders that are more than seven years old. Plaintiff fails to mention, however, that the *Mann* court did not sanction Cooper in any regard and that the *Mann* trial court, relying on the *Mann* appellate opinion, entered a <u>non-sharing protective order</u>.

Plaintiff also misconstrues what happened in the *Brownlee/Whitaker* case. The discovery order related to an isolated incident where a Cooper employee, Barnett, allegedly destroyed documents because she might get in trouble for neglecting her duties by failing to adhere to Cooper's existing document retention policy, *i.e.*, she was supposed to have already destroyed the documents in question in the regular course of business, pursuant to the retention policy. The *Brownlee* court found that Cooper did not direct nor sanction the destruction of the documents at issue. Moreover, the *Brownlee* court specifically stated that it was not saying that Cooper's document retention policy was unreasonable or instituted in bad faith. *See Brownlee* Order attached as Exhibit C.

Neither plaintiff's motion nor the orders cited by plaintiff provide this Court with any evidence that Cooper's current document retention policy is unreasonable or instituted in bad

faith. Therefore, plaintiff's request to indefinitely retain Cooper's trade secret information for potential, future litigation that *might* occur and *might* involve the same tire and *might* involve the same issues is too speculative to overcome Cooper's compelling need for protection of its valuable trade secrets.

## IV.   CONCLUSION.

The "sharing" protective order proposed by plaintiff unnecessarily jeopardizes the security of Cooper's trade secrets and confidential commercial information for no added benefit to plaintiff (only his counsel), does not require the return of Cooper's trade secrets at the conclusion of this lawsuit, and fails to address other important aspects of discovery that are more appropriately addressed in Cooper's proposed order. Cooper's proposed order is superior and appropriate—procedurally and logistically—as recognized by the vast majority of Federal courts nationwide.

Respectfully submitted,

By:   /s/ T. Christopher Trent
T. Christopher Trent
Texas State Bar No. 20209400
S.D. Tex. No. 14244

ctrent@johnsontrent.com

Attorney-in-Charge for Defendant,
Cooper Tire & Rubber Company

Of-Counsel for Defendant,
Cooper Tire & Rubber Company:

Raphael C. Taylor
Texas Bar No. 00788514
S.D. Tex. No. 17278
rtaylor@johnsontrent.com

Jon Paul Hoelscher.
Texas Bar No. 24050771
S.D. Tex. No. 700124
jhoelscher@johnsontrent.com
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam, Suite 1700
Houston, Texas 77002
(713) 222-2323 – Telephone
(713) 222-2226 – Facsimile


# CERTIFICATE OF SERVICE

I certify that on December 2, 2010, a true and correct copy of the foregoing document was served on all counsel of record, including:

| | |
|---|---|
| Josh Hopkins<br>Jason P. Hoelscher<br>SICO, WHITE, HOELSCHER & BRAUGH, LLP<br>900 Frost Bank Plaza<br>802 N. Carancahua<br>Corpus Christi, Texas 78470 | *Via ECF* |
| Luis Elizondo<br>Gregory L. Gowan<br>Lisa C. Huerta<br>THE HUERTA LAW FIRM<br>924 Leopard Street<br>Corpus Christi, Texas 78403 | *Via ECF* |
| Janis H. Detloff<br>Andrew J. McCluggage<br>THOMPSON COE COUSINS & IRONS, LLP<br>One Riverway, Suite 1600<br>Houston, Texas 77056 | *Via ECF* |

                                             */s/ Raphael C. Taylor*
                                               Raphael C. Taylor

166088